Our final case of the day is United States v. Jones, Mr. Thurr. May it please the court. My name is Jim Thurr and I represent Mr. Jermar Jones. This is a criminal case before the court. It involves an appeal from the conviction following a jury trial of Mr. Jones on 11 counts. Those counts include conspiracy, aiding and abetting marriage fraud, aiding and abetting false claims against the government, two counts of witness tampering, and a count of The issues before the court on this appeal are four that I'd like to address. The first one is an issue of a violation of Mr. Jones's Confrontation Clause rights under the Sixth Amendment and admission as substantive evidence of inadmissible hearsay. Specifically, the government's case at trial relied heavily on... You're talking about those wiretaps? They are jailhouse calls, Your Honor. Yes, okay. And those differ from wiretaps in a very important way. Because jailhouse calls start with a recording informing both the inmate and the recipient of the call that the call is being recorded. They had lots of notice. They certainly did. But human nature being what it is, the calls proceeded. And the government used these calls at trial. The individual in the jail was Otis Jones, the cousin of my client, Jamar Jones. And the government introduced these ultimately as substantive evidence. They tried several times to do that. Ultimately, the trial court permitted them to do so. And the focus here is on the statements of Otis Jones. We do not contend that the statements of Jamar Jones were not admissible as statements of a party. That's clear. But Otis Jones's comments and words were not admitted simply for context, which this court's precedent permits. They were admitted... And Otis Jones was talking to your client? That's correct, Your Honor. And to a third party. There was a third party... So it was a conversation where your client was present. Actually... Be like the two of them were talking in a room, right? And you're saying the statements made by your client, you admit those to be admissible, but you say the others are not. That's right, Your Honor. As substantive evidence. As substantive evidence. Because they were not statements made in the course of and in furtherance of a conspiracy. They are not 801-D2E statements. Because they were not made in furtherance of the conspiracy. But there are statements made in his presence. Well, and I have to parse it, Your Honor, because there are three calls. On those three calls, there are occasions where my client third parties in someone else. And the evidence... There was no evidence that my client remained on the phone during those calls. But to put that detail aside... Is there any evidence he didn't remain on the phone during... Was there evidence he did not remain on the phone during those calls? No, Your Honor, because at the end of the conversation, he would come back after there was a... So that would be an indication he was on the phone. One could have concluded that. A jury could conclude that. A jury could conclude that. And a jury could... The question on the conspiracy thing is whether a jury could conclude that the other fellow was involved in it, right? No, Your Honor, because the court has to decide as a preliminary matter that the statements were made in furtherance of the conspiracy. Well, I thought that Otis's conversation went to concealing the conspiracy and how he could get out from being prosecuted. Isn't that... Isn't concealment of a conspiracy in the furtherance of? It is if it's an ongoing conspiracy, Your Honor. But Grunewald of the United States teaches us that trying to conceal your culpability for a prior conspiracy is not in furtherance of the conspiracy. When did he withdraw from the conspiracy, Otis? Different issue, Your Honor. You have the question of was it in the course of, as opposed to in furtherance of the conspiracy. You have to have both those satisfied under 801 D2E. It's not enough simply to have two conspirators talking. The statement has to be in furtherance of the conspiracy for it to qualify for that exemption to the hearsay rule. And Otis Jones, the statements he made, even if they're to be construed as trying to conceal his prior criminal culpability or that of what the jury found against my client, that's not enough for it to be in furtherance of the conspiracy because the conspiracy's objectives had been achieved or, frankly here, had failed. He was in jail and my client was soon to be indicted. So the conspiracy's objectives were in the past. And his statements, those of Otis Jones, cannot be in furtherance of the conspiracy if the objectives of the conspiracy have already been attained or failed. And that's what Grunewald teaches and that's also what the advisory note to Rule 801 makes clear. Well, didn't they discuss whether they should try to continue to get Otis' permanent resident status, which was one of the primary goals of the conspiracy? Otis Jones is, there was no evidence that he had, as I recall, there was no evidence that he had made an application for a residency status. And nevertheless, by May of 2010, when his spouse, Tichara Bowers, is now not only charged but has pled guilty and has been sentenced for marriage fraud and making false claims against the government, it's over. That conspiracy is done. The prosecution continues. But that's not enough for in furtherance. What were the dates of these telephones? It's May 12th and 13th of 2010, Your Honor. And they're alleged as overt acts of the conspiracy. I mean, they alleged in the indictment that they're part of the conspiracy. They did, Your Honor, but that's not sufficient. But did you ask the judge to strike those allegations or anything? I did not, Your Honor. Well, but the indictment went to the jury and you're saying, but you're saying now that the conspiracy ended before they occurred. But the indictment actually alleges that to be part of it. Your Honor, again, I draw a distinction and I think Rule 801 is clear in this point. In the course of the conspiracy is one thing. In furtherance of is another. When the text of the rule is the statements cannot simply be part of the conspiracy. They must be in furtherance of to qualify for the 801 D2E exception to the hearsay rule. And my point is. But the indictment says in furtherance of the conspiracy and to accomplish it, the objects, the following overt acts were committed. And 35 and 36 specifically, maybe others, specifically relate to this. I mean, the jury only has to find one overt act. As far as we know, those are the overt acts they found. Well, the indictment is not evidence, first of all, Your Honor. No, it's not. But it describes the conspiracy. It describes the breadth of the conspiracy. And you've told me, I think, that it wasn't restricted by the judge before it went to the jury, before the case went to the jury. Count one describes this and alleges this as found by the grand jury. There's probable cause to believe that this was part of the conspiracy, which would encompass these telephone calls. Agreed, Your Honor. I'll accept that for purposes of the argument. Nevertheless, that doesn't mean they were in furtherance. And that is what I'm arguing here today. But looking at the verdict in the light most favorable to the prosecution, wouldn't it mean that the jury found they were in furtherance of? Your Honor, the jury's still going. Because the grand jury alleges it. It wasn't stricken. And at the status where we are now, we have a general guilty verdict, which we have to look where we look at the evidence in the light most favorable to the government. And in looking at that evidence, they must have believed it. Admissibility of this. Tell me why that's wrong.  I'm testing you here. OK. It's wrong because it's not true. Don't give up your point. I'm not asking you to give up anything. It's wrong, Your Honor, because it's not a jury question. Pardon? It's not a jury question. It's not for the jury to decide if it's in furtherance. But it's a jury. It is the jury's issue to decide whether they proved what the grand jury alleged. That's what the jury was trying to figure out. Did they prove count one? And the problem is, Your Honor, that they relied, the jury was allowed to use inadmissible evidence of these phone calls for their substantive value. But you say it's inadmissible because it's not part of the conspiracy. Because it's not made in furtherance of it. That's right. And the judge said, we're going to see. And the grand jury found it was made in furtherance of the conspiracy. The jury found it was made in furtherance of the conspiracy, the pedigree. And I would note, too, that the court did not rely upon the indictment or any funding by the grand jury in making its determination. Didn't he instruct the jury on the indictment? The indictment was allowed to go back. And the indictment went back. And there was a jury instruction that said, it's a pattern instruction that simply said the indictment is not evidence. The indictment's not evidence, but that's the structure of the charge. And you have to find an overt act, right? At least one of these overt acts occurred. There are alleged 38 of them, 36 of them. But they had us. And under the verdict, they found them all. Well, we don't know what they found. We don't know which one they found. But so we have to look at it in favor of the government. But the jury should never have been able to rely on those calls, Your Honor. Understand. You've got some other issues here, too, though. Yes, Your Honor. And I want to spend some time on them. Let me talk about the sentencing phase. We have the question of grouping under the sentencing guidelines, loss amount under the sentencing guidelines, and then the restitution order. Now, grouping is important here because it has a material effect on my client's sentence. He was sentenced to 52 months based on- He got 60 months? 52, Your Honor. 52 months? Yes. For how many weddings? How many phony weddings did he perform? He didn't perform any, Your Honor. He arranged them all. He's a wedding coordinator and planner. He was accused of aiding and abetting. For the Navy, right? Yes, he was, Your Honor. In the business of it. And he didn't get a dime from the Navy. That was clear at trial. He didn't get a dime from the sailors. Other people got money from the Navy. They increased the dependents' benefits. They did. Well, that's ripping off the government. And all of those individuals were convicted and then testified against my client. But on the issue of grouping, Your Honor, this revolves around counts 9 and 10. Now, on counts 9 and 10, those are the witness tampering counts. And the trial court's error was in applying 3D1.2c and application note 5 to not group both counts 9 and count 10 with the other counts of conviction. And here is the error that the trial court made in my view. If you look at 2J1.2, that is the guideline that applies to obstruction, including witness tampering. It directs the trial court to look to 3C1.1, which is the obstruction enhancement guideline, and to 3D1.2c. 3C1.1, the obstruction enhancement guideline, is imperative that counts of obstruction will be grouped, not may be grouped, not can be grouped, will be grouped when you get to 3D1.2c, note 5. The paragraph that the trial court relied upon has the language, when you're dealing with counts that could be treated separately, the problem is for obstruction counts, they cannot be treated separately under the guidelines because 3C1.1 says they cannot. And as a result, counts 9 and 10 needed to be grouped. And that has an important effect on my client's sentence. It's not a harmless error here, because that put him at a different offense level, it subjected him to a higher term of imprisonment, and the trial court was clear in its sentencing that it was applying the guidelines. It was not a variant sentence, it was not a departure, it was applying the guidelines. And so this grouping was important. The second issue that I want to address on the sentencing side is the loss amount. These co-conspirators who were kind enough to testify against my client, who actually received the BAH benefits, had confessed to NCIS of their fraudulent marriages, and for reasons that were never made clear, no evidence was presented, their benefits, their BAH benefits continued past the point that they confessed to NCIS they'd engaged in marriage fraud. So you're saying they should have cut them off early. And the Navy regulation that's cited in my papers is clear. You don't get BAH just because you're married. How much difference does that make altogether? Well, it makes a two-level reduction the offense level, Your Honor, and that's a big difference. That drops his high end more than 10 months, his high end. And it puts him in a 37 low end, just on the loss amount, leaving aside grouping. Obviously, as the court knows, these things all play together, you have a number of factors that Are you saying that the Navy regulation, unlike the case in Tribble, requires an immediate cessation of benefits upon admission by a person that they're no longer entitled to it? Yes, Your Honor. In fact, the regulation requires that once there's any evidence, and I cite the regulation in my brief, statement by the service member, special investigation, the service member has to then provide proof of support. In other words, he has to provide proof that he or she is providing those BAH payments to the support of the spouse. And that's why it's very different from Tribble. Tribble, the individual receiving the benefits was the defendant. In this case, Mr. Jones did not receive any of these BAH benefits that were given to the service members. They all went to the service members. They continued to receive them past the date of their confession. In fact, it's unclear to me exactly how far it went. Your Honor, I'm out of time. I have five minutes left for rebuttal, and I'll try to address my other points then. I know you have time, but one question. The point in time where they cut them off was when they were indicted. Do you agree with that? No, Your Honor. I don't believe that that is true. That was stated at trial, at the sentencing hearing, but I don't think that the, there was no evidence as to when the BAH benefits themselves were terminated. The government represented the trial court that the loss computation and then the restitution amount as well was based on the date of indictment of the service members, but I don't know when the BAH was actually cut off for them. Thank you.  Mr. Stoker. May it please the court. My name is Randy Stoker. I'm an assistant United States attorney with the Eastern District of Virginia in the Norfolk Division. I was trial counsel for this case, along with AUSA Joe D. Padilla, and I represent the United States here today. Your Honor, I want to first dive into the issue of these statements, the statements by Mr. Otis Jones that were made in the jail phone calls. Yes, Your Honor. The first point that I want to make is defense counsel represented that the United States relied heavily upon these statements in the presentation of this case. That simply was not the case. Later in his presentation, he mentioned that the co-conspirators had testified against Mr. Jones. That, Your Honor, was the meat of our case. Are you starting now to argue the harmless error? Is that what you're arguing about? I'm just throwing that out there right away, Your Honor, because I don't want to forget to make the point, because I'm going to come back to it at the end. Don't worry, I want to get into the hearsay as well. Are you going to say there's no error? There is no error. All right, that's what I thought your position was. That's correct, Your Honor. Okay. But I did want to clear up the fact that there were a number of co-conspirators who testified directly against Mr. Jones. These phone calls were not the smoking gun. That is exactly right, Your Honor. So I'll move on. These phone calls are admissible under the hearsay, as non-hearsay, because they're statements of a co-conspirator. The issue of whether these statements were in furtherance of the conspiracy, as counsel stated, is sort of the issue here. But I want to talk a little bit first, what we didn't get to was what was said. What was said in these phone calls? And of note, in the appendix on page 504, the defendant tells Otis, who Otis is the one in jail, tells Otis, tell them there is no fraud. Tell them that you, tell your lawyer to call me. Otis says, yeah, right, I'll do that. Otis says, yeah, I'll tell them it's the real thing. We didn't divorce. The marriage is still on. That is, that's one, that's one soundbite of these calls. There are other examples that are in the joint appendix where they talk about, what are we gonna do about Ms. Bowers? Ms. Bowers was the fake wife of Otis Jones. What is she telling the agents? So there's some discussion and some obvious concern about what Ms. Bowers might say. As far as whether this conspiracy is ongoing, the court is correct that we did allege that as part of the indictment. But beyond that, the conspiracy is clearly ongoing because there was documentation. There was INS, an INS petition submitted on behalf of Mr., of Otis Jones, and that was submitted on July 25th, 2007, and that was testified to at trial by Mrs. Bowers. So the question of whether there was, the conspiracy was ongoing is supported by the evidence. It's supported by the content of what's in the calls. And clearly, by the sound bite that I just read, it's also, the statements can also be read to be in furtherance of this conspiracy. And the court is, the court's been clear on this point in the case of United States versus Shores. It says that, the Fourth Circuit has said that there's a reasonable, there can be alternative interpretations of what these statements mean. But as long as there's some basis to show that they could be in furtherance of, they should be allowed in. And that's what the district court, that's what the district court found. With respect- The appellate also, at least raises before us, another basis for error with respect to these statements, and that is a confrontation clause issue. Now, I'm wondering whether that specific claim of error was actually presented to the district court. I know there was an objection, but it's not clear to me that the objection was based on confrontation grounds. There, I don't recall if that objection was made at trial or if it was in the motion for a new trial, Your Honor, but it was raised at the district court level and it was addressed by Judge Davis. At some point? At some point, yes. But if it wasn't raised at trial, then it seems to me that the standard would be a much more difficult burden for the defendant or the appellant here on appeal. Yes, Your Honor, I would agree with that. But on the merits, this is Crawford touches on testimonial hearsay, and I would submit to the court that these statements, first, as I just laid out, are not hearsay. They fall under the- You're saying they're defined out of hearsay. Excuse me? They're defined out of hearsay by the furtherance of the conspiracy. They're not hearsay. Correct, because they are co-conspirator statements and they fall under 801 D2E. So they're not hearsay on the first point. The second point is they're clearly not testimonial. The fact that there is a message that is played that tells the inmate that the calls are being recorded does not bring this to the level of testimony. That does not mean that it's testimony. Under Crawford, as the court knows, under Crawford, it says that casual marks between acquaintances do not rise to the level of testimony. It also says, under Crawford, that the examples that they give talk about things such as affidavits, things such as oaths, prior testimony that the defendant may not have had a chance to cross-examine. Crawford even goes as far as to- It stretches a bit when it talks about police interrogations, and the only reason it stretches even into police interrogations is because, as the opinion reads, police interrogations have a bare resemblance to testimony given before justices of the peace in England. I would submit to you that a jailhouse phone call between two co-conspirators comes nowhere close to any of that, Your Honor. On the issue of grouping, moving to that, the key provisions with regard to grouping, and I'd like to read from the sentencing guidelines, is it does have to do with a supposed tension between 3C1.1 and 3D1.2, and the reason why there is a possible conflict or a possible tension between those two sections, Your Honor, is because the conduct, the obstructive conduct in this case is so egregious that we're having to figure out how to spread around and properly account for all of the obstructive conduct done by the defendant. This is not a case where we don't have enough- where counts are performing double duty. We have plenty of counts, plenty of obstructive conduct, and we're trying to figure out the correct way to group it. And 3C1.1 does talk about obstructive conduct and how to handle that. Oh, I should mention, when I talk about the obstructive conduct, we're talking about two counts of witness tampering. Those are counts of conviction, and then there's the finding of perjury because the defendant took the stand and the judge made a finding that he lied before the court. But under Note 8 in 3C1.1, it talks about grouping under 3D1.2C. There's a note telling you how to reconcile the two. And it says that if the defendant is convicted of both an obstructive offense and an underlying offense, the count for the obstructive offense will be grouped with the count for the underlying offense under subsection C of 3D1.2. And the group for that group of closely related counts will be the offense level for the underlying offense increased by the two-level adjustment. Now, so 3C1.1 is telling you flat out you need to acknowledge 3D1.1.2C. So then we go to 3D1.2C, and it talks about in Note 5, it talks about the proper way to group counts and what takes precedence, whether you group same victim, same transaction type counts together, or whether you do something else. And 3D1.2C says when one of the counts embodies conduct that is treated as a specific offense characteristic in or other adjustment to, the guideline applicable to another of the counts. That's telling you you can group them when it's okay to group counts that can be adjustments with the underlying account. The point is in Note 5. Note 5 clears this up. Frequently, this provision will, I'm reading towards the bottom, this provision will overlap subsection A, that's the part that talks about how to group same victim, same transaction, at least with respect to specific offense characteristics. However, a count such as an obstruction of justice, which represents a Chapter 3 adjustment and involves a different harm or societal interest than the underlying offense, is covered by subsection C, even though it is not covered by subsection A. So that's telling you that subsection C applies. And then it goes on. And here's the crucial point. And it's crucial because there are multiple counts of obstructive conduct in this case. Involving different victims. Yes, Your Honor. Sometimes there may be several counts, each of which could be treated as an aggravating factor to another more serious count. But the guideline for the more serious count provides an adjustment for only one occurrence of that factor. In such cases, only the count representing the most serious of those factors is to be grouped with the other count. And then it goes on. So what it's telling you is that when you have multiple obstructive counts, you can group that with an underlying offense and apply the appropriate enhancement. And you can also set out the other obstructive offense because that was actually a count of conviction. And the note provides an example. It provides an example of how you decide which is the more serious count that you group with the underlying offenses. And that is exactly what the district court did here. In count 10, he ruled that count 10 was the witness tampering with respect to Shatara Bowers, who was visibly shaken, shaken up and was crying after the defendant had intimidated her or tried to threaten her. And he grouped that count as the more serious. The other count involving witness tampering was simply a, it was a verbal altercation involving a male, Mr. Alexander, and he clearly was not as physically affected by the encounter. So he pulled out count 10, put that with the underlying offenses and grouped it accordingly and treated count nine separately. And that is exactly, although it's a bit confusing, it parallels the example given in the note. And most importantly, Your Honor, most significantly, by doing it that way, it abides with the spirit of the guidelines of what the guidelines are trying to do in section, in part D, which is to provide incremental punishment for significant additional criminal conduct. If you group it the other way, the defendant essentially gets a pass for this egregious conduct. He can commit any number of counts of witness tampering or whatever and the guidelines under the regime that defense counsel is espousing, the guidelines wouldn't adequately address that. By doing it this way, you at least apply some measure of enhancement based on those aggravating factors. With regard to moving on to the BAH payments, what the court did- You don't mind the loss calculation? Yes, Your Honor. With regard to the loss calculation, this is tripled. This is tripled as the court pointed out. Well, but the appellant says tripled dealt with a different loss guided by a different regulatory scheme and he says the Navy regulations impose an obligation on Navy officials to stop the BAH allotment as soon as they find out that there's something wrong, something amiss. A couple of things on that. The testimony at trial was given by several different sources. The testimony by the co-conspirators was that Mr. Jones instructed them every step of the way how to go about getting the BAH started. In some cases, Mr. Jones physically drove these individuals to the personnel office in order to get it started. But the point is that he knew that the BAH payments start once a marriage certificate is presented to the personnel person in the individual's command. There is no, I'm not sure if I misunderstood, but under this guideline, as it says, proof of support of a lawful spouse or unmarried minor, legitimate child is generally not required under the guidelines. And that is the general policy. That is the policy that Petty Officer Payne, who is a personnel man, he testified to during trial. He says, oh, we get the document regarding the marriage certificate and off we go. My argument is that it's reasonable then, reasonably foreseeable that the defendant, understanding what it takes to start the BAH payments, that he would also understand that it takes something similar, a similar official document, something from the court, meaning a divorce decree saying that BAH would no longer apply because they're not married, or an actual conviction something, a judgment of conviction that, hey, this marriage was fraudulent and BAH never should have been awarded. Well, isn't it true that all these people remained in their marriages so there was no divorce? That's correct, Your Honor. So the Navy regulations, they're obligated to continue paying. That's correct, Your Honor. And barring that, barring some type of divorce decree, or as I said, a conviction under Tribble, those payments should continue. The district court outlined a couple of reasonable scenarios that would kind of caution against the Navy getting involved in what he said, she said in terms of a confession. What if he then recants his confession? What if the non-spouse or the non-sailor spouse disputes the sailor's claim that this marriage was somehow illegitimate? The Navy doesn't get into that. What starts the BAH is the official marriage certificate. What stops it is a divorce decree or in the case of Tribble, some type of conviction or official finding that there was a fraud here. And those aspects are reasonably foreseeable by the defendant, given all the testimony that he understood how the system works. He understood what it took to start the BAH payment. With regard to the loss calculation as to restitution, I think that my argument there is very similar to what I would say regarding the loss as it pertains to the guidelines. There is a different standard. We acknowledge that. But as long as there is some type of causal connection between the defendant's criminal conduct and the victim's specific losses, in this case, the Navy, as long as there's a causal connection there that the defendant should be held liable or if the court finds, as the court did here, jointly and severally liable for the total restitution amount. I think I've covered all the key points. I'm going to sit down unless the court has some more questions for me. Thank you very much. I appreciate it. Mr. Thorpe. Thank you, Your Honor. I really wish I could have this extra two minutes. I only have five, though. Judge Diaz, it's not the same victim. I want to take issue with you on that. An obstruction count, the victim's society as a whole and its interest in the administration of justice. So the victim, for purposes of the guidelines, for the obstruction counts, for the perjury at trial, is society as a whole. It's the same victim. But for grouping, it's really not important. 3C1.1 says counts will be grouped. Obstruction counts will be grouped with the substantive conduct to which they apply. There's no sliding scale in the 3C1.1. It's a plus-two enhancement for obstruction. It's not plus-two every time you obstruct. The guidelines could have that. The loss amounts, for example, the loss amount is $10,000. It's one enhancement. If it's a million dollars, it's a lot more. The guidelines don't do that. And that's what the trial court purported to apply. And that's why the sentence should be vacated. On the issue of the loss amount, Mr. Jones did not tell the sailors to go confess to NCIS. He did not direct that. And the evidence at trial was not that you only could stop BAH with a divorce decree. The regulation, the next line that Mr. Stoker did not cite, proof of support of a lawful spouse or unmarried minor legitimate child of a member is generally not required. However, when evidence, for example, special investigative reports, statement by member of non-support or inadequate support are received, proof of adequate support, as stated in paragraph U-10106-E is required. So as soon as NCIS had statements from Bowers, Alexander, Ortiz, that they were engaged in marriage fraud and they were drawing BAH without providing support, the Navy had an affirmative obligation to require proof of payment of support, which, of course, they could not have done. They just confessed that it was fraudulent. The scenarios the district court applied in arriving at the loss amount at sentencing, there was no evidence in the record for those scenarios. The regulation was uncontested and the regulation is what required that the loss amount be cut off at that point. On the restitution, as my colleague conceded, a different standard. It's a proximate causation standard. It's not a reasonably foreseeable standard, which is what applies for 2B1.1 on the loss amount. So for the restitution, proximate causation, and as the government conceded in their brief, there was an intervening cause for restitution and proximate cause was cut off at the point of these confessions. The intervening cause was the Navy's failure to stop the amounts. Now, lastly, let me return to my hearsay argument. My colleague mentioned that Mr. Otis Jones had submitted a petition to INS on July 25, 2007. I believe that emphasizes that the conspiracy's objectives had been attained long before May of 2010 when these calls were made. Now, I know you want to get to the merits and rebut the merits, but the government at the very beginning said, this really doesn't matter because, as you pointed out, your client's co-conspirators were kind enough to testify against them. And in fact, the government's evidence is that the government's view of this is that the evidence was overwhelming. If it is, then isn't this simply an academic exercise? Your Honor, I don't think so. This court just, well, this month, March 1, 2013, and U.S. v. Moore, which is number 11-5095 in footnote two, made this comment. What is emphasized in closing indicates centrality of issue at trial. The government played these tapes in its closing. If this was simply another straw on the camel, they played the tapes in their closing argument? They did, Your Honor. And that under Moore, this court decided just 19 days ago. Is that a Richmond case, if I recall? You remember where that case came from? I believe it was, Your Honor, but I'm sorry. I can look it up and submit that. I think I'm just trying to make sure. There's a lot of Moores. And the fact that the government relied on these tapes at closing, I think undercuts the harmless error analysis. One does not. You say it's error, and it's not harmless. That's your point. Absolutely, Your Honor. And to address the confrontation... Well, but on the other hand, the government doesn't present evidence at trial simply to ignore it at closing. The question is, was that the focal point of the government's argument? I don't think you're saying that. May I answer that question? Absolutely. Nevertheless, Your Honor, I think the fact that this court has ruled that what is presented at closing is central undercuts the harmless error argument. And the fact that the confrontation clause was not reached at trial was simply because under 801 D2E, if these statements are not hearsay, I never have the opportunity to object on a confrontation clause basis, and that's what the trial court did. Thank you very much. Thank you, sir. Before we come down to Greek counsel, I want to say a couple things. First of all, I want to thank Mr. Thur. I know I mispronounce your name all the time, but he's a court-appointed lawyer here representing Mr. Jones, and he's done an excellent job all the way through, tried this case and handled this appeal, and we could not operate the criminal justice system, the federal system, without the assistance of folks like you. We appreciate it very much.
judges: Robert B. King, Albert Diaz, Henry F. Floyd